***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** PLAINTIFF'S MOTION TO STRIKE ALEX ARAB'S TESTIMONY FROM THE RECORD
Plaintiff moved for an Order striking from the record the ergonomic opinion testimony expressed by Mr. Alex Stephen Arab, a licensed physical therapist, athletic trainer, and *Page 2 
ergonomist, based upon the grounds that he does not have significant general educational qualifications and formal training in ergonomics. After consideration of the written and the oral arguments of the parties, Plaintiff's Motion is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to these proceedings.
2. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings.
3. An employment relationship existed between the parties at all times relevant to these proceedings.
4. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer at all times relevant to these proceedings.
5. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — North Carolina Industrial Commission forms and filings, discovery responses, Plaintiff's medical records, and Plaintiff's medical bills;
 b. Defendants' Exhibit One (1) — Compact disc depicting an on-site evaluation of Plaintiff's employment duties on March 6, 2008 and *Page 3 
Ergonomic Job Analysis dated March 11, 2008 (the actual compact disc is dated March 5, 2008, although the contents of both the compact disc and the Ergonomic Job Analysis indicate that the on-site evaluation occurred on March 6, 2008).
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's condition in her right shoulder that Dr. Robert Alexander Creighton surgically treated is a compensable occupational disease for which Defendants are liable under the North Carolina Workers' Compensation Act?
2. Whether Plaintiff is entitled to any workers' compensation benefits?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 63 years old, with a date of birth of April 6, 1946. Defendant-Employer is a florist. Plaintiff began her employment as a floral designer with Defendant-Employer sometime in 2005, and had previous experience as a floral designer with other florists.
2. Plaintiff's responsibilities as a floral designer required her to spend most of the day producing different shapes, styles, and sizes of floral arrangements for weddings, funerals, special events, etc. Plaintiff would arrange flowers in a sitting position, due to arthritis in her knees and ankles. The lay witness testimony at the hearing before the Deputy Commissioner established, and the Full Commission so finds, that approximately 15 percent (or nine (9) *Page 4 
minutes per hour) of Plaintiff's eight (8) hour work day would typically involve overhead reaching in some manner.
3. In May 2007, Plaintiff began having increased pain in her right shoulder during the week leading up to Mother's Day, which was a very busy time for Defendant-Employer. Plaintiff reported this right shoulder pain to her supervisor, Ms. Patricia Ann Gregory. Ms. Gregory directed Plaintiff to seek medical treatment for her right shoulder at UNC Hospitals.
4. On July 18, 2007, Plaintiff presented to the emergency department at UNC Hospitals with a chief complaint of intermittent right shoulder pain exacerbated by her work as a floral designer. Radiology of the right shoulder revealed minimal inferior subluxation of the gleno-humeral joint. Plaintiff received prescriptions for Darvocet and Naproxyn, and a referral to an orthopaedist.
5. On July 25, 2007, Plaintiff saw Ms. Emily M. Marlow, a nurse practitioner, who concluded that the cause of her right shoulder pain was either bursitis or a partial rotator cuff tear. Plaintiff received a cortico-steroid injection and a referral to physical therapy. Nurse Practitioner Marlow advised Plaintiff that if the cortisone injection and physical therapy did not begin to relieve her pain in the next week, she should follow up with Dr. Robert Alexander Creighton, an orthopaedist who is an assistant professor in the Department of Orthopaedics at the University of North Carolina School of Medicine.
6. On September 7, 2007 Plaintiff underwent magnetic resonance imaging (MRI) of her right shoulder, which revealed a full-thickness tear in her rotator cuff. On October 5, 2007, Plaintiff saw Dr. Creighton in order to review the results of the MRI. Based upon the results of the MRI, both Plaintiff and Dr. Creighton agreed that surgery was the best option at that point. *Page 5 
7. On October 13, 2007, Dr. Creighton wrote Plaintiff out of work, in preparation for her upcoming surgery. On October 18, 2007, Dr. Creighton performed the following surgical procedures on Plaintiff's right shoulder: arthroscopic rotator cuff repair; arthroscopic sub-acromial decompression; extensive arthroscopic debridement of glenoid superior labrum synovitis; and biceps tenotomy. Plaintiff tolerated these procedures well, and began a course of physical therapy post-operatively.
8. Plaintiff's post-operative course went well until January 7, 2008, when Plaintiff complained to Dr. Creighton of increased pain during physical therapy. Dr. Creighton administered a sub-acromial steroid injection, which gave Plaintiff some relief, and recommended that Plaintiff take a week off from physical therapy. Dr. Creighton further recommended that if Plaintiff's pain did not improve, he would need to obtain another right shoulder MRI in order to evaluate her rotator cuff integrity.
9. Because Plaintiff's pain did not improve, on February 4, 2008, Plaintiff underwent another right shoulder MRI. On February 22, 2008, Dr. Creighton reviewed the results of the MRI, which revealed abnormalities within the supra-spinatus and infra-spinatus of Plaintiff's right shoulder. Dr. Creighton felt that there was some sort of failure of the mid-substance of the rotator cuff repair, and he recommended that Plaintiff undergo additional surgery.
10. On March 27, 2008, Dr. Creighton performed a right shoulder arthroscopic lysis of adhesions that developed in Plaintiff's sub-acromial space. During the procedure, Dr. Creighton found extensive scar tissue in the sub-acromial space of Plaintiff's right shoulder, as well as early degenerative changes of the gleno-humeral joint. Plaintiff tolerated this procedure well, and underwent physical therapy afterward without complications. *Page 6 
11. On March 6, 2008, Mr. Alex Arab, a licensed physical therapist, athletic trainer, and an ergonomist, performed an on-site evaluation of Plaintiff's floral designer position at Defendant-Employer. Mr. Arab's evaluation included a review of Plaintiff's duties, work environment, and physical demands in this particular floral designer position with Defendant-Employer. Mr. Arab took force and weight measurements of items that Plaintiff lifted and used during her typical work day, including flowers and the clipping tools used to trim the various flowers. Following Mr. Arab's evaluation of Plaintiff's duties in her floral designer position with Defendant-Employer and his assumption of the ergonomic risk factors for cumulative trauma injuries such as rotator cuff tears, Mr. Arab concluded that the risk associated with Plaintiff's floral designer position was low, and did not exceed the risks associated with activities of daily living for the general population. In preparing his March 6, 2008 ergonomics report, Mr. Arab assumed that less than 10 percent of Plaintiff's eight (8) hour work day would typically involve overhead reaching in some manner, although both parties concede that approximately 15 percent of Plaintiff's work day would typically involve overhead reaching in some manner. The Full Commission finds that little weight should be given to any opinion testimony of Mr. Arab that may have been based upon this incorrect assumption.
12. Dr. Brian Thomas Szura, an orthopaedic surgeon, performed an independent medical examination (IME) of Plaintiff on June 10, 2008. In addition to performing a physical examination and reviewing all available medical records, Dr. Szura reviewed the March 6, 2008 ergonomics report and video with Plaintiff present, and had a discussion with Plaintiff about her job duties. Dr. Szura opined that Plaintiff's employment as a floral designer did not place her at an increased risk for developing a rotator cuff tear, and that a rotator cuff tear is an injury which is common to the general public, an ordinary disease of life, and a condition that a certain *Page 7 
percentage of the general population tends to develop irrespective of employment or employment status. Dr. Szura agreed that the risk factors for cumulative trauma injuries such as rotator cuff tears encompass a combination of factors, as opposed to just a single factor. Dr. Szura further opined that even "occasional" overhead use of the shoulder (meaning between 11 and 33 percent of an eight (8) hour work day) would not increase the risk of a rotator cuff tear, and that increased risk of a rotator cuff tear would not occur until the employment involved "frequent" overhead use of the shoulder (meaning between 34 and 66 percent of an eight (8) hour work day). Finally, Dr. Szura opined that there was no causal relationship between Plaintiff's rotator cuff tear and her employment with Defendant-Employer. Rather, Dr. Szura was of the opinion that Plaintiff's age and the presence of a type III acromion in her shoulder were more likely attributable to her development of a rotator cuff tear, and that the type III acromion, by itself, would have increased the risk of a rotator cuff tear with even normal use of the shoulder.
13. Dr. Creighton opined, to a reasonable degree of medical certainty that Plaintiff's duties as a floral designer placed her at an increased risk for the development of the conditions that he treated, including the right rotator cuff tear, based upon the assumption that approximately 15 percent (or nine (9) minutes per hour) of Plaintiff's eight (8) hour work day would typically involve overhead reaching in some manner. Dr. Creighton further opined, to a reasonable degree of medical certainty, that Plaintiff's overhead use of her right shoulder 15 percent of her eight (8) hour work day significantly contributed to the development of her right rotator cuff tear. In reaching these opinions, Dr. Creighton assumed and considered the following set of facts:
 . . . the general public uses . . . the right arm over their head less than ten percent of the time doing their job duties. And . . . Ms. Bailey's job duties required her to use her arm at least fifteen percent of the *Page 8 
time during that eight-hour work period, as well as your own medical records and your own examination of Ms. Bailey.
14. Although Dr. Creighton did not review the March 6, 2008 ergonomics report and video, and he did not have any substantive discussions with Plaintiff about her specific duties as a floral designer, he did base his opinions upon not only his continued treatment of Plaintiff's right shoulder over an extended period of time, but also upon the same set of assumed facts as Dr. Szura that Plaintiff used her right shoulder overhead for a greater amount of time during her work day (15 percent) than the general public does (10 percent). Because Dr. Creighton, as Plaintiff's authorized treating physician, has a more thorough understanding and familiarity with her right rotator cuff tear and other conditions he treated than Dr. Szura, who only saw Plaintiff once, and since Dr. Szura's opinions concerning increased risk and causation of Plaintiff's right rotator cuff tear appear to represent only a difference of opinion between experts, the Full Commission gives greater weight to the opinion testimony of Dr. Creighton over any contrary opinions of Dr. Szura.
15. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's job duties as a floral designer placed her at an increased risk for the development of the conditions that Dr. Creighton treated, including the right rotator cuff tear, and that Plaintiff's overhead use of her right shoulder 15 percent of her eight (8) hour work day significantly contributed to the development of her right rotator cuff tear.
16. Dr. Creighton testified that as of June 25, 2008, he would have released Plaintiff to return to light-duty work due to the progress that she was making in her recovery. However, Defendant-Employer did not have any light-duty work available for Plaintiff at that time, and so he did not actually issue a return-to-work note. Therefore, Plaintiff established continuing disability through the date of the hearing on May 19, 2008 and continuing because she has not *Page 9 
been released to return to work. The last day that Plaintiff worked in any employment was October 13, 2007.
17. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff has yet to reach maximum medical improvement with regard to the right shoulder condition that Dr. Creighton treated.
18. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's average weekly wage at all times relevant to these proceedings was $440.00, yielding a compensation rate of $293.50.
19. It would appear that in addition to Plaintiff's occupational injury claim under N.C. Gen. Stat. § 97-53(13) that she is also pursuing an occupational injury claim related to bursitis in her right shoulder under N.C. Gen. Stat. § 97-53(17). The Full Commission finds, based upon the greater weight of the evidence, that there is insufficient evidence to support this claim. Neither Dr. Szura nor Dr. Creighton, the only medical expert witnesses of record, offered any opinions specifically addressing whether Plaintiff's employment as a floral designer caused the development of bursitis. Although Dr. Creighton did testify that Plaintiff's "repetitive overhead use contributed to her rotator-cuff pathology," it is uncertain whether he meant for the term "rotator-cuff pathology" to include bursitis, and he did not discuss any findings of bursitis in either of his operative notes or other medical records.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 10 
1. In Rutledge v. Tultex Corp./King's Yarn, the North Carolina Supreme Court held that in order for an occupational disease to be compensable under the North Carolina Workers' Compensation Act, a plaintiff must prove that the claimed disease is: (1) characteristic of persons engaged in the particular trade or occupation in which the [plaintiff] is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the [plaintiff's] employment." Rutledge v. TultexCorp./King's Yarn, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
2. Plaintiff established, by the greater weight of the evidence, that as a result of her employment she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment, and which is not an ordinary disease of life, to which the general public, not so employed, is equally exposed. N.C. Gen. Stat. § 97-53(13) (2008); Rutledge, 308 N.C. 85, 93, 301 S.E.2d 359, 365
(1983).
3. Dr. Robert Alexander Creighton opined, to a reasonable degree of medical certainty, and the Full Commission found as fact herein, that Plaintiff's duties as a floral designer placed her at an increased risk for the development of the conditions that Dr. Creighton treated, including the right rotator cuff tear, and that Plaintiff's overhead use of her right shoulder 15 percent of her eight (8) hour work day significantly contributed to the development of her right rotator cuff tear. In reaching his opinions, Dr. Creighton considered his medical records and his examination and treatment of Plaintiff. Dr. Creighton had sufficient facts concerning the nature of Plaintiff's job duties from which to render competent opinions. The opinion testimony of Dr. Creighton satisfies the requirements of Holley v. ACTS, Inc., which sets forth the minimum standards required for the admission of medical causation testimony in workers' compensation *Page 11 
cases, including the requirement that the testimony be "more likely than not," and Young v. Hickory Business Furniture, which requires that an expert opinion be based on more than mere speculation and conjecture.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
4. There is insufficient evidence to support Plaintiff's occupational injury claim related to bursitis. N.C. Gen. Stat. § 97-53(17) (2008);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
5. As a result of Plaintiff's occupational disease of right rotator cuff tear, she became medically disabled and unable to earn wages in any employment for the period of October 13, 2007 through the present and continuing. Russell v. Lowes Production Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
6. As a result of Plaintiff's occupational disease of right rotator cuff tear, she is temporarily and totally disabled from working and is entitled to indemnity compensation at the rate of $293.50 per week from October 13, 2007 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29
(2008).
7. Plaintiff is not at maximum medical improvement with respect to her occupational disease of right rotator cuff tear, and she requires further medical evaluations, testing, and treatment, and any other reasonably required treatment and/or diagnostic testing ordered by Dr. Creighton, in order to effect a cure, to give relief, and/or to lessen her period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2008).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 12 
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $293.50 per week for the period from October 13, 2007 through the present and continuing, until further Order of the North Carolina Industrial Commission. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's occupational disease of right rotator cuff tear, including expenses associated with the treatment provided by Dr. Robert Alexander Creighton and Dr. Brian Thomas Szura, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of any accrued compensation owed to Plaintiff and thereafter, every fourth (4th) check from future compensation due Plaintiff.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of June 2009.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING: *Page 13 
 S/___________________ STACI T. MEYER COMMISSIONER
DISSENTING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 14